Fourth Appellate Department, January Term, 1903. Reported.
79 App. Div. 409.

PATRICK W. CULLINAN, as State Commissioner of Excise, Respondent, *v.* THE UNION SURETY AND GUARANTY COMPANY, Appellant.

**Certification of a check at the request of the drawer—A surety for the bank is not discharged because the bank credits the amount of the check to the account of the payee.**

The certification, at the request of the drawer, of a check drawn by a special deputy commissioner of excise upon excise funds deposited with a bank, and the transfer at the time of such certification to the account of the payee, without the knowledge or acquiescence of the payee or the drawer, of the amount of the check, will not, in the event of the non-payment of the check when presented with due diligence, discharge the drawer from liability to the payee and thus relieve the surety upon the bond, given by the bank to secure the faithful performance of its duties as depositary, from liability to the State Commissioner of Excise for the amount of such check.

WILLIAMS, J., dissented.

APPEAL by the defendant, The Union Surety and Guaranty Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 23d day of July, 1902, upon the decision of the court rendered after a trial at the Oswego Trial Term before the court without a jury, the case having been submitted upon an agreed statement of facts, and also from an order entered in said clerk's office on the eighth day of August, 1902, denying the defendant's motion for a new trial made upon the exceptions filed.

*William B. Brice,* for the appellant.

*Sheldon B. Mead,* for the respondent.

SPRING, J.: Plaintiff is the State Commissioner of Excise and one of his depositaries was the City National Bank at Buffalo.

The defendant, pursuant to section 13 of the Liquor Tax Law (Laws of 1896, chap. 112, as amd. by Laws of 1900, chap. 367) became a surety for the bank, and the bond which it gave to the plaintiff contained this condition: "Now, therefore, the condition of this obligation is such that if the above bounden, The City National Bank of Buffalo shall and will safely keep all such

moneys that may be so deposited in or held by said Bank on deposit as aforesaid, and shall and will promptly pay the same over at any and all times upon legal demand therefor, then this obligation to be void otherwise, to remain in full force and effect."

The Special Deputy Commissioner of Excise for the county of Erie, during the year 1901, collected for the plaintiff and deposited in said bank the sum of $5,578.08. Between the twentieth day of May and the tenth day of July of that year said Special Deputy Commissioner gave seven checks payable to the order respectively of supervisors and other officials to whom said money was properly payable, the aggregate amount of said checks being $3,795.53. These seven checks as they were issued were certified by the bank at the request of the drawer. There were two other uncertified checks issued aggregating $1,782.55. All of these checks were delivered to their respective payees and were presented to the depositary, but payment was refused as the bank in the meantime had failed, and its assets were in the possession of a receiver. There is no question raised that the drawer unduly delayed the delivery of any of these checks, or that the payees were tardy in their presentation. On the other hand, it is stipulated that the checks were duly indorsed and presented and payment thereon duly demanded. At the time the checks were certified the officers of the bank, apparently without the knowledge or acquiescence either of any of the payees or the drawer, transferred to the account of each payee the amount represented by his check. The checks have never been paid, and this action is brought by the plaintiff to recover upon the bond of the surety company. The defendant concedes that it is liable for the amount represented by the uncertified checks, but contends that the fact that the other checks were certified was a transfer to the credit of each payee of the amount of his check, releasing the drawer and consequently the surety company.

We think this position is untenable. The effect of the certifying of these checks was that the bank guaranteed the genuineness of the signature of the drawer, that it had in its custody sufficient funds to meet them, and agreed that the money should not be withdrawn to the prejudice of the holder of the check. The payee of a certified check, where the certification is procured by the drawer, is not a party to the transaction and is not bound by it.

The learned counsel for the appellant relies upon *First National Bank of Jersey City* v. *Leach* (52 N. Y. 350). In that case the check was procured to be certified by the holder and not by the drawer, and it was held that this act on the part of the holder discharged the drawer and operated as a payment between these two. The court, however, is particular to say that "this would not discharge the drawer of a check who himself procured it to be certified and then put it in circulation."

In Selover's Negotiable Instruments Law (§ 129) the rule is thus stated: "Where the drawer of a check procures its certification by the bank he still remains liable, but where the holder obtains the certification, the drawer and all prior indorsers are discharged from liability."

To the same effect is Norton on Bills and Notes (2d ed. 400).

Crawford's Annotated Negotiable Instruments Law (2d ed. notes under § 324) says: "But where the check is certified when delivered it does not constitute payment any more than an uncertified check; and if it is presented promptly and dishonored, the loss must fall upon the drawer."

The reason for the rule would seem to be that where the drawer procures the certification himself the bank knows that the check has not been put into circulation, and the act done is for the benefit and at the instance of the drawer. The payee of the check has taken no part in the certification and it is done without his knowledge. On the other hand, where the holder of a check presents it to the bank, procures its certification, he is the one that secures the transfer of the fund to his own account, and consequently the drawer is discharged. If the rule contended for by the appellant is correct, then it would be unsafe for one to accept a certified check unless he well knew the bank was solvent. The certificate to a check instead of adding to it might lessen its value as commercial paper. The Negotiable Instruments Law (Laws of 1897, chap. 612, § 324) is as follows: "Where the holder of a check procures it to be accepted or certified the drawer and all indorsers are discharged from liability thereon." This limits the discharge of the drawer to the act of the holder in procuring the certificate.

The payees of the check did not know of the transfer of the money to their accounts and consequently never assented thereto. They presented the checks for the money in the usual way and failed to get it. They may have desired payment on the checks

instead of having the money placed to their credit, without any knowledge or any action on their part. If the position taken by the surety company is correct, the bare acceptance of the checks operated as a payment to the extent of the sums which they purported to represent. We find no authority sustaining any such principle.

The condition of the bond given by the defendant was that it " will promptly pay the same over at any and all times upon legal demand therefor." This condition of the bond has not been complied with, for the bank refused to pay the checks drawn on this fund by the plaintiff. In cases of this kind, where bonds are given for the protection of a State department, the surety company will be held to a rigid construction of its agreement.

The facts in this case were stipulated and submitted to the trial judge, without a jury, and a formal decision was rendered by him separately stating the findings of fact and conclusions of law. It appears from these stipulated facts that since the City National Bank has been in the hands of a receiver dividends to the amount of fifty per cent. have been made, and those represented by the seven checks in question are still retained by the receiver and no payment has been made on the checks by reason thereof. It does not appear whether or not the checks have ever been returned to the plaintiff or been canceled. The effect of the judgment and its payment by the surety company would be to subrogate it in place of the plaintiff as to this fund, but even that might not be sufficient to protect the appellant.

The judgment should be modified by requiring the plaintiff to produce the checks for cancellation or transfer to the appellant and formally assign his interest in the fund in the hands of the receiver, including his interest in any subsequent dividends which may be declared. This cancellation and assignment should be made simultaneously with the payment of the judgment.

The judgment, as so modified, should be affirmed, without costs of this appeal to either party. The form of the order may be settled before Mr. Justice SPRING on two days' notice, unless agreed upon by the parties.

ADAMS, P. J., HISCOCK and NASH, JJ., concurred; WILLIAMS, J., dissented.

Judgment modified in accordance with the opinion, and as so modified affirmed, without costs of this appeal to either party.